IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

─────────────────────────────────────────────────────

JEFFREY REEVES,                         )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )          No. 21-1116-TMP
                                        )
KILOLO KIJAKAZI,                        )
COMMISSIONER OF SOCIAL                  )
SECURITY ADMINISTRATION,                )
                                        )
    Defendant.                          )

─────────────────────────────────────────────────────

ORDER AFFIRMING THE COMMISSIONER'S DECISION

─────────────────────────────────────────────────────

On August 9, 2021, Jeffrey Reeves filed a Complaint seeking judicial review of a Social Security disability benefits decision. (ECF No. 1.) Reeves seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. On November 23, 2021, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, both parties consented to the magistrate judge's authority and the case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment. (ECF No. 15.) For the reasons below, the decision of the Commissioner is AFFIRMED.

# I.   BACKGROUND

Reeves initially filed for Social Security Disability Insurance benefits on November 14, 2016. (R. 367.) Reeves had a previous application for benefits denied by a different Administrative Law Judge ("ALJ") on November 17, 2015. (R. 28.) The ALJ in the present case found that "the record contains new and additional evidence" and that Reeves's current applications "involve deciding whether the claimant is disabled during a period that was not adjudicated in the prior final hearing decision." (Id.) Thus, the relevant period for Reeves's potential disability was determined to be from November 20, 2015 to present. (Id.)

Reeves's first hearing was held on September 20, 2018. (R. 86.) After this hearing, the ALJ issued a decision denying Reeves's claims. (R. 208.) The Appeals Council ultimately remanded Reeves's case for another hearing, directing the ALJ "to give further consideration to treating, non-treating, and non-examining source opinions and explain the weight given to such opinion evidence." (R. 27.) The ALJ was also instructed to obtain evidence from a vocational expert regarding "the effect of the assessed limitations on the claimant's occupation base." (Id.) This second hearing was held on August 5, 2020. (Id.)

After this hearing, the ALJ applied the five step analysis to determine whether Reeves was disabled under the meaning of the Act. At the first step, the ALJ determined that Reeves had not

-2-

engaged in any substantial gainful activity since November 20, 2015. (R. 30.) At the second step, the ALJ found that Reeves had the following severe impairments: "degenerative disc disease and osteoarthritis." (Id.) The ALJ noted that Reeves had medically determinable impairments of hypertension and visual issues as well, but found that they did "not cause more than a minimal limitation of physical or mental ability to do basic work activities or have not lasted 12 months." (R. 30-31.) Finally, while Reeves had reported being diagnosed with sarcoidosis in 1993 and his treating physician had included the condition in his diagnostic impressions, the ALJ found "no objective findings to support such a diagnosis." (R. 31.) At the third step, the ALJ concluded that Reeves's existing impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ was required to determine Reeves's residual functional capacity ("RFC"), or his "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (R. 29.) The ALJ proceeded to consider Reeves's physical examination records and reported symptoms before turning to the medical opinion evidence. (R. 31-38.) On appeal, Reeves takes issue with how the ALJ evaluated the medical opinion evidence provided by Dr. David

-3-

Larsen, his treating physician, and Dr. Peter Gardner, an examining physician.

Dr. Larsen's opinion provided that:

> [T]he claimant could occasionally lift and/or carry a maximum of 10 pounds and frequently lift and/or carry less than 10 pounds. He stated the claimant could sit and stand/walk for one hour at a time, could sit for four hours total in an eight-hour workday, and could stand/walk for two hours total in an eight-hour workday. He opined the claimant could frequently handle, finger, and feel; occasionally reach in all directions; and less than occasionally push and/or pull with the bilateral upper extremities. He also opined the claimant could occasionally operate foot controls bilaterally. Dr. Larsen stated the claimant could occasionally balance, but could less than occasionally stoop, kneel, crawl, and climb ramps or stairs. He opined the claimant could occasionally operate a motor vehicle and have exposure to moving mechanical parts or vibration. He stated the claimant could have less than occasional exposure to unprotected heights, humidity and wetness, pulmonary irritants, and temperature extremes. He stated the claimant could tolerate moderate noise, such as in an office.

(R. 36.) However, the ALJ gave this opinion "little to no weight." (Id.) The ALJ noted that while Dr. Larsen was Reeves's treating source, his first examination of Reeves was only four months before this opinion was issued. (R. 36-37.) The short treatment history consisted of six visits, three of which did not involve Reeves's severe impairments, and "the only explanation [Dr. Larsen] provided for the limitations identified was 'back pain and sarcoidosis[.]'" (R. 37.) Because the ALJ found "no objective evidence to support a diagnosis of sarcoidosis," she concluded that "Dr. Larsen's statements in this regard appear to be based

entirely upon the claimant's self-report[.]" (Id.) The ALJ also stated that Dr. Larsen's exam findings did not support his opinion, since the exams showed "a normal gait, unremarkable neurological exams, full range of motion, and negative straight leg raises." (Id.) The fact that Reeves did not take his prescription medication and handled his pain through anti-inflammatories and muscle relaxers further undercut the weight the ALJ gave to Dr. Larsen's opinion (Id.)

Dr. Gardner's opinion provided that:

> [T]he claimant could occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. He stated the claimant could sit 30 minutes at a time, or five hours total in an eight-hour workday and could stand/walk 15 minutes at a time or two hours total in an eight-hour workday. He opined the claimant could frequently finger and feel bilaterally, could occasionally reach in all directions and handle bilaterally, and could push and/or pull with the bilateral upper extremities less than occasionally. He opined the claimant could operate foot controls occasionally with his right foot and less than occasionally with his left foot. Dr. Gardner found the claimant could frequently balance and could stoop, kneel, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds less than occasionally. He indicated the claimant was unable to avoid workplace hazards due to visual deficits on the left side. He stated the claimant could occasionally operate a motor vehicle and have occasional exposure to humidity, wetness, and extreme cold. He limited the claimant to less than occasional exposure to moving mechanical parts, pulmonary irritants, extreme heat, and vibration. He stated the claimant should never be exposed to unprotected heights. Finally, he opined the claimant could tolerate exposure to moderate noise levels, such as an office setting.

(Id.) The ALJ gave some weight to Dr. Gardner's lifting and carrying limitations, but no weight to the remainder of the

opinion. (Id.) The ALJ noted that while Dr. Gardner had examined
Reeves, his opinion was "unsupported by his own exam findings,
which consist largely of 'tenderness to palpation.'" (Id.) The ALJ
also found that Dr. Gardner's opinion was "inconsistent with the
longitudinal records showing largely normal exams" as well as the
claimant's reported daily activities and conservative medical
care. (Id.)

Ultimately, in light of all the above evidence, the ALJ
determined:

> [Reeves] has the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) and
> 416.967(b). Specifically, the claimant is able to lift
> and carry up to 25 pounds on occasion and up to 12 pounds
> frequently. The claimant is able to sit up to eight hours
> total and is able to stand and walk up to six hours
> total.

(R. 31.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves
lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds . . . a job is in
this category when it requires a good deal of walking or standing,
or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls."

At step four, the ALJ determined that Reeves was "capable of
performing past relevant work as a coding machine operator." (R.
39.) This determination was informed by the opinion of a vocational
expert at the hearing, who testified that "if an individual had
the claimant's residual functional capacity, such an individual

-6-

could perform the claimant's past relevant work as a coding machine operator, as generally performed." (Id.) Accordingly, the ALJ found Reeves not disabled and denied his application for benefits.[1]

The ALJ published her decision on August 20, 2020. (R. 42.) Reeves appealed this decision to the Appeals Council, which denied review on June 30, 2021. (R. 1.) Reeves then filed the present appeal on August 9, 2021, arguing that the ALJ did not correctly assess the medical opinions of Dr. Larsen and Dr. Gardner. (ECF No. 1.)

## II. ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial

---

[1]Although not necessary, the ALJ also made alternate findings at step five, determining that "there are other jobs that exist in significant numbers in the national economy that the claimant can also perform, considering the claimant's age, education, work experience, and residual functional capacity." (R. 40.) These findings were also informed by the testimony of the vocational expert, who provided multiple representative examples. (Id.)

evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506,

-8-

509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

## B. Medical Opinion Evidence

Reeves argues that the ALJ did not correctly apply the regulations when determining his RFC, and that this necessarily means that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Reeves argues that "the ALJ's RFC finding that [he] could perform light level work is not supported by substantial evidence because the ALJ did not adequately evaluate medical opinions, under 20 CFR 404.1520c."

However, as the government notes in its brief, because Reeves filed his application for benefits before March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1527 when considering medical opinions and prior administrative medical findings in the record, not 20 C.F.R. § 404.1520c.[2] In formulating an RFC assessment under the older regulations, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions."

---

[2]Reeves's claim was initially filed on November 14, 2016, as he notes in his brief. (ECF No. 19 at 2.) For claims filed on or after March 27, 2017, new regulations that abandon the old scheme of weighing medical opinion evidence apply. See 20 C.F.R. § 404.1520c.

Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir.
2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r
of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "As a general
matter, an opinion from a medical source who has examined a
claimant is given more weight than that from a source who has not
performed an examination." Gayheart v. Comm'r of Soc. Sec., 710
F.3d 365, 375 (6th Cir. 2013). The Sixth Circuit Court of Appeals
has explained that:

> An opinion from a treating physician is "accorded the
> most deference by the SSA" because of the "ongoing
> treatment relationship" between the patient and the
> opining physician. A nontreating source, who physically
> examines the patient "but does not have, or did not
> have[,] an ongoing treatment relationship with" the
> patient, falls next along the continuum. A nonexamining
> source, who provides an opinion based solely on review
> of the patient's existing medical records, is afforded
> the least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir.
2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875
(6th Cir. 2007)) (internal citations omitted). A treating source's
opinion is given controlling weight if it is "well-supported by
medically acceptable clinic and laboratory diagnostic techniques
and is not inconsistent with the other substantial evidence in
[the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk v.
Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). When
an ALJ does not grant a treating source opinion controlling weight,
they must evaluate each medical opinion by considering the length
of the treatment relationship and frequency of examination, the

nature and extent of the relationship, the supportability and consistency of the opinion, the specialization of the source, and any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). There is no need to "systematically address each factor listed in 20 C.F.R. § 404.1527"; an ALJ complies with the regulations if they provide "the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion." Thompson v. Saul, 20-cv-01137-TMP, 2021 WL 839162, at *7-8 (W.D. Tenn. Mar. 5, 2021) (quoting Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 805 (6th Cir. 2011)).

        1.   Dr. Larsen's Opinion

        Reeves argues that the ALJ incorrectly evaluated Dr. Larsen's opinion by "fail[ing] to mention consistency entirely" and by "putting more emphasis on Dr. Larsen's treating source status and by discussing the length of his treatment relationship." (ECF No. 19 at 14.) Finally, he contends that the ALJ improperly considered that Dr. Larson's opinion was "a check-box form" since it is not a listed factor of consideration under 20 C.F.R. § 404.1520c. (Id.)

        Reeves misstates the applicable regulations and his argument fails as a result. Under 20 C.F.R. § 404.1527, the ALJ is to give "controlling weight" to a treating source opinion as long as it is not inconsistent with the medical evidence and is well supported by accepted medical techniques. When a treating source opinion is

not given controlling weight, the ALJ must give "good reasons" for discounting it and determine the proper weight according to a list of factors, not all of which need to be systematically addressed. Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 629 (6th Cir. 2016) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). Here, the ALJ declined to give Dr. Larsen's opinion controlling weight, since it was supported solely by identifications of "back pain and sarcoidosis" or "mostly due to sarcoidosis," a diagnosis that the ALJ did not find any objective medical evidence for in the record.[3] (R. 37.) Indeed, the

---

[3]Reeves's argument misunderstands the regulations on this point. The ALJ found that Reeves's alleged sarcoidosis was not a medically determinable impairment due to the record containing "no objective finding to support such a diagnosis." Reeves points to Dr. Larsen's opinion, a claimed diagnosis of sarcoidosis by Dr. Keown, and records from Vision Works noting the prior diagnoses and a sarcoid on Reeves's left eye. (ECF No. 19 at 14.) However, "a record from a doctor's appointment containing merely a list of previous diagnoses does not amount to an anatomical, physiological, or psychological abnormality which can be shown by medically acceptable clinical and laboratory diagnostic techniques," as the regulations require. Bryan v. Comm'r of Soc. Sec., No. 2:18-cv-554, 2019 WL 2021156, at *5 (S.D. Ohio May 8, 2019) (citing 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908). Of the evidence Reeves cites, only the Vision Works records represent more than a recitation of previous diagnoses. Those records indicate a sarcoid on Reeves's left eye, which Reeves is already blind in for seemingly unrelated reasons. (R. 30.) The ALJ found Reeves's visual issues a medically determinable impairment but noted that since Reeves can and does drive often, they imposed not more than "a minimal limitation of physical or mental ability to do basic work activities that have not lasted 12 months." (R. 30-31.) Since "disability is determined by the functional limitations a condition imposes, not the mere diagnosis of a condition," and there is no objective medical evidence contained in the record for the limitations Reeves alleges that his sarcoidosis causes, the

conservative or non-existent treatment for all of Reeves's
ailments further undermined Dr. Larsen's opinion. (Id.) The ALJ
also noted that Dr. Larsen's opinion was not consistent with his
own exam findings, which included "a normal gait, unremarkable
neurologic exams, full range of motion, and negative straight leg
raises." (Id.) After declining to grant controlling weight, the
ALJ then properly assessed the length of Dr. Larsen's relationship
with Reeves (only six visits across four months, three of which
were unrelated to the impairments discussed here) as well as the
supportability of the opinion. (Id.); see 20 C.F.R. § 404.1527(c).
The factors the ALJ considered when assigning Dr. Larsen's opinion
little to no weight have all been previously found as "good
reasons" to discount a treating source opinion by the Sixth
Circuit. See Kepke, 636 F. App'x at 629-31 (consideration of
"checklist opinion," conservative treatment for ailments, and
three month treating relationship was proper and amounted to giving
"good reasons"); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719,
729-30 (6th Cir. 2013) (consideration of "sparse treatment" and
"use of over-the-counter medication justified not granting
controlling weight). Ultimately, Reeves asks the court to reweigh

---

ALJ's determination that sarcoidosis was not a medically
determinable impairment was supported by substantial evidence.
Bryan, 2019 WL 2021156, at *6 (quoting Denham v. Comm'r of Soc.
Sec., No. 1:14-cv-611, 2015 WL 5471435, at *11 (S.D. Ohio Sept.
18, 2015)).

the evidence of sarcoidosis and other ailments in his favor, which the court is not able to do.

### 2.  Dr. Gardner's Opinion

Reeves argues that the ALJ incorrectly evaluated Dr. Gardner's opinion by incorrectly finding that Dr. Gardner's prescribed limitations were not supported by his own examination findings, and that the limitations were inconsistent with Reeves's reported activities of daily living and medical treatment. (ECF No. 19 at 14-15.)

Reeves's argument essentially asks the court to resolve conflicting medical evidence in his favor. But the court cannot do so. "[W]hen the ALJ is presented with the not uncommon situation of conflicting medical evidence, the trier of fact has the duty to resolve that conflict." Shepard v. Comm'r of Soc. Sec., 705 F. App'x 435, 442 (6th Cir. 2017) (quoting Richardson, 402 U.S. at 399)). The ALJ found that Dr. Gardner's opinion "is inconsistent with the longitudinal records showing largely normal exams, including full strength, a normal gait, and negative straight leg raises." (R. 37.) Reeves points to certain exams that showed him presenting with a limping or antalgic gait, but this merely creates a conflict in the medical evidence, not a lack of substantial evidence for the ALJ's resolution of that conflict. (ECF No. 19 at 15.) The ALJ noted that Dr. Gardner's opinion was also too restrictive in light of Reeves's daily activities, as he could

-14-

"independently manage personal care and hygiene, care for pets, prepare simple meals, and do household chores," including attempting to mow the lawn, drive, shop, and volunteering at his church. (R. 33.) Reeves points out that "his mother or sister usually helps prepare meals and that his nephew usually mows his lawn," but again, conflicts in the reported evidence are to be resolved and judged by the ALJ, not the reviewing court. O'Brien v. Comm'r of Soc. Sec., No. 19-2441, 2020 WL 4559505, at *7 (6th Cir. Aug. 7, 2020) (consideration of daily activities by ALJ as inconsistent with the record as a "long held" Sixth Circuit approach). The court may only reverse an ALJ's decision if it is not supported by substantial evidence, not where the evidence could support two possible conclusions. Walters, 127 F.3d at 528.

## II.  CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 11, 2021
Date

-15-